# United States District Court

## DISTRICT OF ARIZONA

In the Matter of the Search of

10333 E. Diamond Ave.
Mesa, AZ 85208

CASE NUMBER:  21-9113 MB

## SEARCH AND SEIZURE WARRANT

**TO:**   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**See Attachment A, incorporated by reference**
The affidavit in support of this Search Warrant is herein incorporated by reference or attached.

The person or property to be searched, described above, is believed to conceal:

**See Attachment B, incorporated by reference**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   5/14/2021
Date (Not to Exceed 10 days)

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 3103a (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (check the appropriate box)
☐ for _____ days (not to exceed 30).   ☐ until, the facts justifying, the later specific date of _____.

Date and Time Issued    5/4/2021 @ 11:00am     _____
                                                                    Judge's Signature

City and state:          Phoenix, Arizona          Eileen S. Willett, United States Magistrate Judge
                                                                    Printed Name and Title

## ATTACHMENT A

*DESCRIPTION OF PREMISES TO BE SEARCHED*

The premises located at 10333 E. Diamond Ave, Mesa, AZ 85208, is a two-story, single family house with white stucco walls, tan trim, and a brown tile roof. A white garage door with Palladian style windows faces the northeast. On the west side of the garage door, the numbers 10333 sit below a black sconce light.

Search of the above described location, including: rooms, attics, basements, and other parts therein, the surrounding grounds, any garages, storage rooms, trash containers, and out-buildings of any kind located thereon, and any vehicles directly on the property or in the street in front of or nearby or adjacent to the above identified location, provided that prior to searching said vehicle or vehicles, the vehicles can be specifically connected to person(s) at or associated with the property to be searched. These vehicles include:

- A blue 2016 Audi S3, Vehicle Identification Number (VIN) WAUB1GFF6G1034682, bearing Arizona license plate CKM4015;

- A white 2006 Audi A3, VIN WAUMF78P66A072752, bearing Arizona license plate CKM4249.

1



**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1.     The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code (U.S.C.), § 922(g)(1), felon in possession of a firearm or ammunition, Title 26, U.S.C., § 5861(a), illegal manufacture of NFA weapons, and Title 26, U.S.C., § 5861(d), possession of an National Firearms Act (NFA) weapon not registered in the National Firearms Registration and Transfer Record (NFRTR) namely:

    a.     Any photographs, documents, emails, text messages, notes or other items that are related to the sale, purchase, receipt, or possession of any firearms or ammunition or any other illegal activities;

    b.     Any documents or records that reflect the identity of the person(s) controlling, occupying, possessing, residing in or owning the Target Location to be searched, including rental agreements, leases, rent receipts, deeds, escrow documents, utility bills and other mailed envelopes reflecting the address and addressee;

    c.     Any and all firearms and ammunition possessed in violation of Title 18, U.S.C., § 922(g)(1), including components used in the reloading of ammunition such as ammunition casings, bullets, primers, and powders;

    d.     Any and all weapons possessed in violation of Title 26, U.S.C. § 5861(a) and (d), including any parts or components that when assembled constitute a violation of the aforementioned statutes, and any tools that could or would be used specifically to assemble such weapons;

e.      Any explosive or destructive devices, powders, chemicals, or compounds used in the assembly, creation, or manufacture of such devices;

f.      Any firearm components or accessories, to include optics, triggers, upper receivers, barrels, grips, un-serialized lower receivers, unfinished 80% lowers, parts-kits, or auto-sears used to modify, enhance, or complete a firearm as defined in Title 18 U.S.C. § 921, or weapons as defined in Title 26, U.S.C. § 5845;

f.      With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized;

i.      evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.     evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii.    evidence of the attachment of other devices;

iv.     evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.      evidence of the times the device was used;

2

      vi.    passwords, encryption keys, and other access devices that may be necessary to access the device;

      vii.    applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

      viii.    records of or information about Internet Protocol addresses used by the device;

      ix.    records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.    As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3.    As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media,

such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

5.      In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a.      Any digital device capable of being used to commit, further or store evidence of the offense(s) listed above;

b.      Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.      Any magnetic, electronic, or optical storage device capable of storing digital data;

d.      Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e.      Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.      Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.      Any passwords, password files, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

# United States District Court

### DISTRICT OF ARIZONA

In the Matter of the Search of
10333 E. Diamond Ave.
Mesa, AZ 85208

CASE NUMBER:    21-9113 MB

Application for a Search Warrant

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona:

### See Attachment A, incorporated by reference

The person or property to be searched , described above, is believed to conceal:

### See Attachment B, incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of  18 U.S.C. §922(g)(1), and 26 U.S.C. § 5861(d) & (f), and the application is based on these facts:

### See Attachment C, incorporated by reference

- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Authorized by AUSA  *Joseph E. Koehler*

_Thomas G. Phillips_
_____
*Applicant's signature*

Thomas G. Phillips, Special Agent
_____
*Printed name and title*

Telephonically
Sworn to before me and signed in my presence.

Date:  5/4/2021 @ 11:00am
_____

_E S Willett_
_____
*Judge's signature*

City and state:  Phoenix, Arizona
_____

Eileen S. Willett, United States Magistrate Judge
_____
*Printed name and title*

**ATTACHMENT A**

*DESCRIPTION OF PREMISES TO BE SEARCHED*

The premises located at 10333 E. Diamond Ave, Mesa, AZ 85208, is a two-story, single family house with white stucco walls, tan trim, and a brown tile roof. A white garage door with Palladian style windows faces the northeast. On the west side of the garage door, the numbers 10333 sit below a black sconce light.

Search of the above described location, including: rooms, attics, basements, and other parts therein, the surrounding grounds, any garages, storage rooms, trash containers, and out-buildings of any kind located thereon, and any vehicles directly on the property or in the street in front of or nearby or adjacent to the above identified location, provided that prior to searching said vehicle or vehicles, the vehicles can be specifically connected to person(s) at or associated with the property to be searched. These vehicles include:

- A blue 2016 Audi S3, Vehicle Identification Number (VIN) WAUB1GFF6G1034682, bearing Arizona license plate CKM4015;

- A white 2006 Audi A3, VIN WAUMF78P66A072752, bearing Arizona license plate CKM4249.



**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1.      The items to be seized are evidence, contraband, fruits, or instrumentalities of

violations of Title 18, United States Code (U.S.C.), § 922(g)(1), felon in possession of a

firearm or ammunition, Title 26, U.S.C., § 5861(a), illegal manufacture of NFA weapons,

and Title 26, U.S.C., § 5861(d), possession of an National Firearms Act (NFA) weapon not

registered in the National Firearms Registration and Transfer Record (NFRTR) namely:

        a.      Any photographs, documents, emails, text messages, notes or other items that

are related to the sale, purchase, receipt, or possession of any firearms or ammunition or

any other illegal activities;

        b.      Any documents or records that reflect the identity of the person(s)

controlling, occupying, possessing, residing in or owning the Target Location to be

searched, including rental agreements, leases, rent receipts, deeds, escrow documents,

utility bills and other mailed envelopes reflecting the address and addressee;

        c.      Any and all firearms and ammunition possessed in violation of Title 18,

U.S.C., § 922(g)(1), including components used in the reloading of ammunition such as

ammunition casings, bullets, primers, and powders;

        d.      Any and all weapons possessed in violation of Title 26, U.S.C. § 5861(a) and

(d), including any parts or components that when assembled constitute a violation of the

aforementioned statutes, and any tools that could or would be used specifically to assemble

such weapons;

1

e.      Any explosive or destructive devices, powders, chemicals, or compounds used in the assembly, creation, or manufacture of such devices;

f.      Any firearm components or accessories, to include optics, triggers, upper receivers, barrels, grips, un-serialized lower receivers, unfinished 80% lowers, parts-kits, or auto-sears used to modify, enhance, or complete a firearm as defined in Title 18 U.S.C. § 921, or weapons as defined in Title 26, U.S.C. § 5845;

f.      With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized;

i.      evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.     evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii.    evidence of the attachment of other devices;

iv.     evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.      evidence of the times the device was used;

      vi.    passwords, encryption keys, and other access devices that may be necessary to access the device;

      vii.    applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

      viii.    records of or information about Internet Protocol addresses used by the device;

      ix.    records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.    As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3.    As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media,

such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

5.      In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a.      Any digital device capable of being used to commit, further or store evidence of the offense(s) listed above;

b.      Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.      Any magnetic, electronic, or optical storage device capable of storing digital data;

d.      Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e.      Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.      Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.      Any passwords, password files, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

I, Thomas G. Phillips, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      This affidavit is submitted in support of an application for a warrant to search the following property, which is further described in Attachment A, for evidence of a violation of Title 18, United States Code (U.S.C.), § 922(g)(1), felon in possession of a firearm or ammunition, Title 26, U.S.C., § 5861(d), possession of an NFA weapon not registered in the National Firearms Registration and Transfer Record (NFRTR), and Title 26, U.S.C., § 5861(f), unlawful making of National Firearms Act (NFA) weapons: 10333 E. Diamond Ave, Mesa, AZ 85208, the current residence of Sean Mark Manning (MANNING), including all outbuildings, appurtenances, and any vehicles located on the property attributed to MANNING, including a blue 2016 Audi S3, Vehicle Identification Number (VIN) WAUB1GFF6G1034682, bearing Arizona license plate CKM4015 registered to MANNING; and a white 2006 Audi A3, VIN WAUMF78P66A072752, bearing Arizona license plate CKM4249 registered to MANNING.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since February 2020.  As such, I am an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses, particularly those laws found in Title 18 of the United States Code. I am currently assigned to the Phoenix Field Office in Phoenix, Arizona. I am a member of the Joint Terrorism Task Force (JTTF) and am responsible for investigating acts of domestic terrorism. As an

1

agent, I have conducted investigations targeting individuals and groups engaged in acts, conspiracies, plots, plans, and various violations of federal law aimed at overthrowing or influencing federal or state governments, policies, and/or civilian populations by way of threats, force, or violence. I have experience in all aspects of conducting such investigations to include, interviewing defendants, witnesses, and informants, utilizing physical and electronic surveillance techniques, and writing and executing search and arrest warrants. I am a member of the FBI's Evidence Response Team and have been since 2020. I have extensive experience in processing crime scenes and the identification, collection, processing, and preservation of evidence for use in federal criminal investigations. Prior to joining the FBI, I was an officer in the United States Navy. As part of my duties as a naval officer, I led and participated in numerous command investigations.

1.     My training in law enforcement includes agency specific training in all aspects of conducting federal criminal investigations, including the planning, preparation, and execution of search warrants.  I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, U.S.C., § 2510(7), authorized to conduct investigations into alleged violations of federal law.

2.     Through my experience and training, I know that it is a felony offense for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce according to 18 U.S.C. § 922(g)(1).

2

3.      Through my experience and training, I know that, according to 26 U.S.C. §§ 5861(d) and 5871, it is a felony to receive or possess a firearm, as defined in 26 U.S.C. § 5845, which is not registered to him in the National Firearms Registration and Transfer Record.

4.      In addition, through my experience and training I know that, according to 26 U.S.C. §§ 5861(f) and 5871, it is a felony to make a firearm as defined in 26 U.S.C. § 5845 without following the process set forth in 26 U.S.C. § 5822, which requires a person seeking to make such a firearm to (a) file a written application to make and register the firearm; (b) pay any tax payable on the making, with such evidenced by the proper stamp being affixed to the original application form; (c) identify the firearm to be made in the application form as applicable regulations prescribe; (d) identify himself in the application as applicable regulations prescribe, including his fingerprints and his photograph; and (e) obtain the approval of the Attorney General to make and register the firearm, with the application form showing such approval.

5.      Pursuant to 26 U.S.C. § 5845(a)(6), the term "firearm" includes "a machinegun."  Pursuant to Title 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(23), a "machinegun" is "any weapon which shoots … automatically more than one shot . . . by a single function of the trigger," and the term also includes, "any part designed and intended solely and exclusively … for use in converting a weapon into a machinegun."

6.     The Gun Control Act (GCA) of 1968, 18 U.S.C. § 922(o), states machineguns manufactured on or after May 19, 1986, may only be transferred to or possessed by Federal, State, and local government agencies for official use.

7.     This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  The statements set forth in this affidavit are based upon my investigation to date, my experience, my training, and other reliable sources of information relative to this investigation.

## PROPERTY TO BE SEARCHED

5.     The property to be searched is described in Attachment A, incorporated herein by reference.

## ITEMS TO BE SEIZED

6.     The items to be seized are described in Attachment B, incorporated herein by reference.

## PROBABLE CAUSE

7.     As of October 2020, the FBI has been investigating the activities of MANNING regarding his violations of 18 U.S.C. § 922(g)(1), 26 U.S.C. § 5861(a), and 26 U.S.C. § 5861(d). As described more fully below, the FBI's investigation shows that during the past several years, MANNING has been in possession of several firearms or ammunition, and has engaged in the unlawful making of firearms, despite having four felony convictions.

4

8.    In April 2021, your Affiant received certified court documents from the District Attorney's Office for Los Angeles County, which listed MANNING's four prior felony convictions out of the State of California:

a.    On June 25, 2002, MANNING was convicted in the Superior Court of California, Los Angeles County for Offenses Involving Controlled Substances. Specifically, MANNING was convicted for a violation of Health and Safety Code (HS) 11351, a felony, punishable by imprisonment pursuant to subdivision (h) of Section 1170 of California's Penal Code for two, three, or four years in prison. MANNING was sentenced to seven days in jail and 36 months of probation.

b.    On August 16, 2007, MANNING was convicted in the Superior Court of California, Los Angeles County for Possession of Marijuana for Sale. Specifically, MANNING was convicted for a violation of HS 11359, a felony offense. MANNING was sentenced to 36 months of probation.

c.    On September 24, 2013, MANNING was convicted in the Superior Court of California, Los Angeles County for Felon in Possession of a Firearm. Specifically, MANNING was convicted for a violation of California Penal Code 29800(a)(1), a felony. MANNING was sentenced to 16 months in prison.

d.    On February 5, 2015, MANNING was convicted in the Superior Court of California, Los Angeles County for Felon in Possession of a Firearm Specifically, MANNING was convicted for a violation of California Penal Code 29800(a)(1), a felony. MANNING was sentenced to 16 months in prison.

5

## Background

9.      In October 2020, your Affiant became aware of an investigation based out of the FBI Pittsburgh Field Office, Martinsburg Resident Agency, regarding an individual who had ties to an online retailer named Portable Wall Hanger (PWH). Since at least March 2020, PWH purported to sell 3D printed innocuous hooks, made with two pieces. One piece functioned as a legitimate wall bracket, while the other acted as a removable hook.  The removable hook, when detached from the bracket, effectively functioned as an illegal drop in auto sear (DIAS). According to the ATF, a DIAS, when inserted into an AR-style rifle, can convert a semi-automatic AR-style rifle into a fully automatic machine gun.

10.      The photographs below show one of the wall hangers sold by PWH (left) next to a photograph depicting how a DIAS, such as the one sold by PWH can be inserted into an AR-style rifle to convert it into a fully automatic machine gun (right).



11.      According to ATF Ruling 81-4, the ATF examined an auto sear known by various trade names including "AR15 Auto Sear," "Drop In Auto Sear," and "Auto Sear II," which consists of a sear mounting body, sear, return spring, and pivot pin. The ATF found that the single addition of this auto sear to certain AR15 type semiautomatic rifles,

6

manufactured with M16 internal components already installed, will convert such rifles into machineguns. The National Firearms Act, 26 U.S.C. 5845(b), defines "machinegun" to include any combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

12.     Based on information received by PayPal, on May 13, 2020, an individual placed an order on PWH's website using e-mail address "glockpoppin@aol.com," an email address known to belong to/be utilized by MANNING, for a "replacement hanger hook." Your Affiant is aware that the term "Glock" as used in MANNING's e-mail address, likely refers to the firearm manufacturer GLOCK. According to PayPal, the replacement hanger hook was shipped to an individual named Peter Peshefski, located at 10333 E. Diamond Ave, Mesa, AZ 85208. FBI and various State database searches for the name Peter Peshefski yielded negative results. Your Affiant does not believe that any individual named Peter Peshefski currently, or has ever resided at 10333 E. Diamond Ave, Mesa, AZ 85208.

13.     According to information received by GLOCK, Inc., a firearms manufacturer based out of Smyrna, Georgia, MANNING made two separate firearm service requests for pistols in 2019:

a.     In October 2019, MANNING submitted a refurbishment request to GLOCK, Inc. for repairs to the slide of a GLOCK Model 19 pistol with serial number BBSF347. On most semi-automatic pistols, the slide is the part of the firearm that moves during the operating cycle, sliding in a back-and-forth motion that expels a spent casing

and loads the next round from the firearm's magazine when the weapon is fired. The receipt from GLOCK, Inc. listed MANNING as the shipper and recipient of the firearm. The shipping address on the receipt was 10333 E. Diamond Ave, Mesa, AZ 85208. The e-mail address associated with the order was "glockpoppin@aol.com," an e-mail address your Affiant knows to be associated with MANNING. The phone number associated with the order was (818) 339-9000. According to FBI database checks, your Affiant is aware that phone number (818) 339-9000 is a number used by MANNING.

       b.     In December 2019, MANNING made a second slide refurbishment request to GLOCK, Inc. for a separate GLOCK Model 19 pistol with serial number LAV02615.

14.    According to GLOCK, Inc.'s legal department, both slides were shipped directly to MANNING at 10333 E. Diamond Ave, Mesa, AZ 85208 following their refurbishment. MANNING's refurbishment request of two separate GLOCK slides indicates that MANNING was is in possession of two GLOCK handguns as of late 2019. Your Affiant is aware that GLOCK, Inc. does not manufacture handguns in the State of Arizona, indicating that MANNING was in possession of at least two handguns that would have traveled in interstate or foreign commerce.

15.    In May 2020, MANNING made two separate firearm related purchases from Palmetto State Armory, an online retailer from Columbia, South Carolina that sells firearms parts and accessories. On May 8, 2020, MANNING purchased four AK-V 9x19mm U9 35 round patterned magazines. An AK-V 9x19mm U9 35 round patterned

magazine allows a user to load 35, 9mm rounds into an AK-V, an AK pistol version of the Russian Vityaz submachine gun. On May 25, 2020, MANNING made a second purchase from Palmetto State Armory for an AK-V Emergency Repair Kit. According to Palmetto State Armory's website, an AK-V Emergency Repair Kit includes an AK-V Firing Pin, an AK-V Firing Pin Retainer, an AK-V Firing Pin Spring, an AK-V Extractor, an AK-V Extractor Retainer, and an AK-V Rubber Recoil Buffer. In your Affiant's experience, a repair kit has only one purpose, which is for use in a functioning, existing AK variant firearm, or for use in building or manufacturing an AK variant firearm. Both of MANNING's purchases from Palmetto State Armory were billed in his name and shipped to 10333 E. Diamond Ave, Mesa, AZ 85208.

16.     On May 29, 2020, a "guest" account made a purchase from Shield Arms, an online retailer based out of Bigfork, Montana that sells firearms, parts, and accessories, According to Shield Arms, the "guest account" purchased an S15 Catch Combo 1, which includes three S15 magazines, and either one GLOCK Model 43X or one GLOCK Model 48 Mag Catch. Your Affiant is aware that an S15 magazine is a flush-fitting 15 round magazine made specifically for a GLOCK Model 43X or GLOCK Model 48 handgun. Despite the order being placed as a "guest," the name and address used for both billing and shipping listed MANNING as the intended recipient. The order was delivered to MANNING at 10333 E. Diamond Ave, Mesa, AZ 85208.

17.     Between 2018 and 2020, MANNING made two separate purchases from SGAmmo, an online retailer from Stillwater, Oklahoma that sells ammunition. On June 18,

9

2020, MANNING purchased a 1,000-round case of 7.62x39 Full Metal Jacket BT Gold Tiger 124 Grain Russian Ammo. Your Affiant is aware that Golden Tiger ammunition is manufactured at the Vympel facility in Russia. On September 18, 2018, MANNING purchased 10, 20 round boxes of 32 Auto 60 Grain GDHP Speer Gold Dot Hollow Point pistol ammo. Your Affiant is aware that Speer is an ammunition manufacturer based out of Lewiston, Idaho.

18.    According to information received from Scalarworks, an online retailer based out of Pennsylvania that specializes in designing and producing high performance firearms accessories, Rachelle Fuchigami (FUCHIGAMI), MANNING's wife, purchased a LEAP/01 – Aimpoint Micro T-2 bundle on October 22, 2020. According to Scalarworks' website, the LEAP/01 is a firearm optic "designed for shooters who want the lightest, strongest, and most compact quick-detach optic mount possible." The optic purchased by FUCHIGAMI was shipped and delivered to 10333 E. Diamond Ave, Mesa, AZ 85208. Additionally, an e-mail address known to be utilized by MANNING, "glockpoppin@gmail.com," was used to process the order. In addition to using "glockpoppin@aol.com," your Affiant believes "glockpoppin@gmail.com" is a second e-mail address used by MANNING.

19.    On January 22, 2019, FUCHIGAMI posted a photograph on her Facebook page of an Arizona Marriage License, dated January 21, 2019. The marriage license belonged to FUCHIGAMI and MANNING. According to various law enforcement databases, FUCHIGAMI resides at 10333 E. Diamond Ave, Mesa, AZ 85208.

20.     According to information received from LaRue Tactical, an online retailer based out of Texas that sells firearms parts and accessories, MANNING created three separate orders with the company between 2020 and 2021. One order was completed, one order is currently still "in the cart," and one order was cancelled.

a.     On March 18, 2021, MANNING created an order for two SureFire 5.56 3P Eliminator Flash Hiders. According to LaRue Tactical's website, a "3P Eliminator Flash Hider typically results in a 99% overall reduction in muzzle flash compared with a plain muzzle." Your Affiant is aware that an Eliminator Flash Hider, like the SureFire 5.56 3P, can be used on a large variety of rifles and pistols. A Flash Hider is used to reduce the muzzle flash, the visible light at the end of a firearm barrel created by firing a round of ammunition. According to LaRue Tactical, MANNING cancelled this order.

b.     On January 11, 2021, MANNING purchased an Aimpoint T-2 Micro Clear Cover. Your Affiant is aware that the Aimpoint T-2 Micro Clear Cover purchased by MANNING is compatible with the LEAP/01 Aimpoint purchased by FUCHIGAMI in October, 2020. The Aimpoint T-2 Micro Clear Cover purchased by MANNING was billed and shipped to MANNING at 10333 E. Diamond Ave, Mesa, AZ 85208. MANNING used the e-mail address "glockpoppin@gmail.com" and phone number (818) 339-9000 with his order.

c.     On November 27, 2020, MANNING added a Smith Enterprises G6-A2 Vortex Flash Eliminator 5.56 to his "cart" on LaRue Tactical's website. According to LaRue Tactical's website, the Smith Enterprises G6-A2 Vortex Flash Eliminator 5.56

11

"kills muzzle-flash and improves overall actuary." Similar to the SureFire 5.56 3P Eliminator Flash Hider, the Smith Enterprises G6-A2 Vortex Flash Eliminator 5.56 can be used on a large variety of rifles and pistols. As of the writing of this Affidavit, the order has not been cancelled or completed.

21.     According to information received by BOTACH, a retailer based out of Las Vegas, Nevada, MANNING purchased two Battle Steel Level IV 10X12 Ballistic Plates on January 30, 2021. Level IV body armor, such as the ones purchased by MANNING, are Ballistic Hard Armor plates designed to stop .30 caliber armor piercing rounds. The billing and shipping information for the purchase listed MANNING as the recipient at 10333 E. Diamond Ave, Mesa, AZ 85208.

22.     Through my training and experience as an FBI Agent, I have learned that individuals who purchase large quantities of ammunition, especially during a time in which the cost of ammunition increases, routinely store that ammunition in their residence for safety and ease of access, and to hedge against future ammunition shortages or price increases.

23.     Further, I have learned that individuals who purchase large quantities of ammunition normally will retain portions of their inventory, along with records of purchases of firearms, firearms parts and accessories, and ammunition, for long periods of time, regardless of whether their value to the individual has diminished. The presence of these records often may lead to evidence of additional criminal activity not previously known to law enforcement. In some instances, this type of evidence is maintained and

subsequently forgotten. In many instances, individuals who purchase ammunition of a particular caliber typically have a firearm in their possession capable of firing that type of ammunition. Moreover, individuals who purchase firearm accessories, parts, optics, etc., generally have firearms in their possession on which to mount or utilize those parts and/or accessories.

24.     Through my training and experience, I have learned that individuals who possess or own firearms and ammunition routinely store these weapons in their residence or vehicle for ease of access and safekeeping.

25.     Through my training and experience I have learned that prohibited possessors generally acquire their firearms through private party transactions because any attempted purchase of a firearm through a business with a federal firearms license (FFL) will require a query of the National Instant Criminal Background Check System which, based upon their criminal history, will result in the denial of the purchase.

26.     More recently, some prohibited possessors have begun building their own firearms using incomplete or unfinished lower receivers. These products are not manufactured to a point that ATF would classify the products as firearms. When referring to these products, the industry has commonly used terms to include, "blanks," "80% receivers," "80%ers," etc. These products consequently relieve manufacturers, dealers, and buyers, from complying with standard firearm regulations. However, when a person, business, or entity completes the manufacturing process on a variant lower receiver, the resulting product is a firearm and is subject to all firearm regulations under federal law.

13

The completed firearm is often referred to as a "ghost gun" because these firearms frequently lack serial numbers and cannot be traced.

27.     On May 3, 2021, your Affiant obtained information from the ATF verifying that neither MANNING, FUCHIGAMI, nor any other individual residing at 10333 E. Diamond Ave, Mesa, AZ 85208 currently have any NFA firearms registered to them in the National Firearms Registration and Transfer Record (NFRTR), and that neither MANNING, FUCHIGAMI, nor any other individual residing at 10333 E. Diamond Ave, Mesa, AZ 85208 has paid the Special Occupancy Tax (SOT) required by the NFA to manufacture NFA firearms.

## PROOF OF RESIDENCE AND VEHICLE USAGE

28.     On August 7, 2018, the Arizona Division of Motor Vehicles (DMV) issued MANNING a driver's authorization ID: D10728152. MANNING listed his personal address as 10333 E. Diamond Ave, Mesa, AZ 85208.

29.     On March 25, 2021, your Affiant received information from TransUnion, an American consumer credit reporting agency listing MANNING's personal address as 10333 E. Diamond Ave, Mesa, AZ 85208.

30.     On March 23, 2021, your Affiant received information from Experian, an Irish based consumer credit reporting agency listing MANNING's personal address as 10333 E. Diamond Ave, Mesa, AZ 85208.

31.     On March 12, 2021, your Affiant received information from Equifax, an American based consumer credit reporting agency listing MANNING's personal address

as 10333 E. Diamond Ave, Mesa, AZ 85208 and 9023 LINDLEY AVE, NORTHRIDGE, CA 91325. Your Affiant is aware that 9023 LINDLEY AVE, NORTHRIDGE, CA 91325 is the residence of MANNING's mother, Suki Manning. In an interview of Suki Manning by FBI and ATF agents from the Los Angeles Field Office in February 2021, Suki Manning stated that her son, MANNING, resided in Arizona.

32. According to Arizona DMV records, a blue 2016 Audi S3, Vehicle Identification Number (VIN) WAUB1GFF6G1034682, bearing Arizona license plate CKM4015 is registered to MANNING at 10333 E. Diamond Ave, Mesa, AZ 85208.

33. According to Arizona DMV records, a white 2006 Audi A3, VIN WAUMF78P66A072752, bearing Arizona license plate CKM4249 is registered to MANNING at 10333 E. Diamond Ave, Mesa, AZ 85208.

34. On April 7, 2021, FBI surveillance located a white and blue Audi matching the descriptions of those owned by MANNING, parked in the garage of MANNING's residence at 10333 E. Diamond Ave, Mesa, AZ 85208. Surveillance units observed MANNING enter the front passenger seat of the blue Audi and depart the residence.

35. On April 8, 2021, FBI surveillance observed MANNING walk out of the garage of 10333 E. Diamond Ave, Mesa, AZ 85208 and walk around the driveway for a short period of time before reentering the residence.

**TRAINING AND EXPERIENCE – DIGITAL DEVICES/MEDIA**

36. Through my training and experience as an FBI Special Agent, I have learned that many people keep mementos of their firearms, including digital photographs or

recordings of themselves possessing or using firearms on their cell phones/smart phones, computers, flash drives and portable hard drives. It has been my experience that prohibited individuals who purchase firearms illegally will keep the contact information of the individual who is supplying or purchasing firearms to/from the criminal element for future purchases or referrals. I know that much correspondence is via cellular phones. I know that much correspondence between persons buying and selling firearms often occurs by e-mail or text message sent to and from smart phones. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price. Therefore, based on my experience, I believe that it is probable that cellular telephones may contain text messages or e-mails between MANNING and other individuals discussing the possession, sale or transfer of firearms. In my experience it is common for prohibited individuals to have photographs of firearms they or other prohibited individuals possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms. I also know that people keep receipts from purchases of items related to firearms possession, including ammunition, holsters, etc.

37.    As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers,

scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices. Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that data in digital form can be stored on a variety of digital devices and that during the search of a premises it is not always possible to search digital devices for digital data for a number of reasons, including the following:

     a.     Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. There are so many types of digital devices and software programs in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched.

     b.     Digital data is particularly vulnerable to inadvertent or intentional modification or destruction. Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data. As a result,

a controlled environment, such as a law enforcement laboratory or similar facility, is essential to conducting a complete and accurate analysis of data stored on digital devices.

      c.     The volume of data stored on many digital devices will typically be so large that it will be highly impractical to search for data during the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 500 or more gigabytes are now commonplace. Consequently, just one device might contain the equivalent of 250 million pages of data, which, if printed out, would completely fill three 35' x 35' x 10' rooms to the ceiling. Further, a 500 gigabyte drive could contain as many as approximately 450 full run movies or 450,000 songs.

      d.     Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files saved to a hard drive can be stored for years with little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, i.e., space on a hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space, for long periods of time before they are overwritten. In addition, a

computer's operating system may also keep a record of deleted data in a swap or recovery file. Similarly, files that have been viewed on the Internet are often automatically downloaded into a temporary directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently downloaded or viewed content. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment. Recovery also can require substantial time.

e.     Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications and materials contained on the digital devices are, as described further in the attachments, called for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole. Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual

19

memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, e-mail programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

       f.      Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device. For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device. Evidence of the absence of particular data on a digital device is not segregable from the digital device. Analysis of the digital device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment, and can require substantial time.

    38.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## **CONCLUSION**

39.     Based upon my training and experience, and the facts set forth herein, I submit that there is probable cause to believe that the items described in Attachment B are evidence of violations of Title 18, United States Code (U.S.C.), § 922(g)(1), felon in possession of a firearm or ammunition, Title 26, U.S.C., § 5861(d), possession of an NFA weapon not registered in the National Firearms Registration and Transfer Record (NFRTR), and Title 26, U.S.C., § 5861(f), unlawful making of National Firearms Act (NFA) weapons, will be found in the property set forth in Attachment A.

*Thomas G. Phillips*
THOMAS G. PHILLIPS, SPECIAL AGENT
Federal Bureau of Investigation

Telephonically                              4th          May
Sworn to and subscribed before me this _____ day of ~~April~~ 2021.

*ESWillett*
Eileen S. Willett
United States Magistrate Judge

21